Submitted April 3, affirmed August 26, 2015

Gina M. BORUM,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Department
2014EAB1652; A158304

359 P3d 422

Gina Borum filed the brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

**FLYNN, J.**

Claimant petitions for review of an order of the Employment Appeals Board (board) that affirmed an order of the Employment Department that claimant must repay Emergency Unemployment Compensation (EUC) and Federal Additional Compensation (FAC) in the amount of $11,884 that claimant was paid during the periods October 17, 2010 through January 1, 2011, and February 27, 2011 through June 4, 2011. We review the board's order "for substantial evidence and errors of law, and to determine whether [its] analysis comports with substantial reason," *SAIF v. Ramos*, 252 Or App 361, 363, 287 P3d 1220 (2012), and affirm.

We first emphasize that the nature of the decision presently before us is limited. Claimant applied for unemployment compensation benefits beginning October 17, 2010. Following a hearing, on August 9, 2011, an administrative law judge (ALJ) found that claimant voluntarily quit work without good cause the week of October 17, 2010, and that she was, therefore, disqualified from benefits beginning that date and until she earned enough from subsequent employment to eliminate the disqualification. *See* ORS 657.176(2).[1] The August 9, 2011, order became final when claimant failed to appeal it to the board, and claimant was bound by the determination that she was disqualified from receiving benefits beginning October 17, 2010. *See Nichols v. Employment Dept.*, 252 Or App 623, 625, 289 P3d 276 (2012) (in challenge to notice of overpayment based on finding that claimant voluntarily left work, claimant could not collaterally challenge prior final order that she voluntarily left work).

In the order on review, the ALJ found that claimant had not earned enough from employment after October 17, 2010, to end her disqualification from benefits for having voluntarily quit work without good cause and, therefore,

---

[1] ORS 657.176(2) provides, in pertinent part, that an individual who has "[v]oluntarily left work without good cause" is disqualified from receiving benefits until the individual earns four times the "weekly benefit amount" in subsequent employment. The August 9, 2011, order treats quitting work without good cause as equivalent to leaving work without good cause, and claimant does not contend that quitting a job means something different from voluntarily leaving the job without good cause.

was not entitled to the $11,884 the department had paid to her. The ALJ also found that claimant had caused the overpayment because, when she sought benefits for the week of October 17, 2010, she answered "no" to the question "[d]id you quit a job last week," a response determined in the August 9, 2011, order to have been false. The ALJ thus concluded that claimant was liable to repay the $11,884, regardless of whether she knew her statement was inaccurate. The board adopted that order.

Claimant argues that the overpayment amount should not have included benefits paid "for the period February 13, 2011 through June 4, 2011, which total $6,748," because she "was approved to receive benefits" for that period in a September 21, 2011, administrative order. The September 21, 2011, order to which claimant refers addressed a challenge by one of claimant's employers to a department determination that claimant was "available for work" during the period February 13, 2011 through June 4, 2011. The September 21, 2011, order that claimant was "available for work" did not preclude the department from later determining that she was ineligible for benefits because she "voluntarily quit work without good cause." Being "available for work" is only one part of eligibility for unemployment compensation. *See* ORS 657.155 (listing eligibility factors, including being "available for work," and not being "disqualified from benefits or ineligible for benefits under any other section of this chapter"); ORS 657.176(2)(c) (claimant is disqualified from receiving benefits if she "[v]oluntarily left work without good cause"). The record contains substantial evidence in support of the board's finding that, despite being available, claimant was nevertheless ineligible for benefits during that period because she had not worked enough hours to eliminate disqualification from receiving benefits.

Claimant also argues that she should have been granted a waiver of the requirement to repay the overpayment "based on fairness and severe hardship." Under the Supplemental Appropriations Act 2008, Pub L 110-252, § 4005(b), 122 Stat 2323 (2008)—the law that provides for the benefits that claimant received—the state "shall require" repayment when an individual receives benefits to which

the individual was not entitled, but "may" waive repayment if the individual "was without fault" and if requiring repayment would be "contrary to equity and good conscience."[2] The board determined that repayment would not be waived because claimant was "at fault" in causing the overpayment.

Claimant argues that repayment should be waived because she "could not have known at the time she made the claim" that she was not entitled to the benefits. Although at the hearing claimant offered sympathetic reasons about why she did not view the circumstances under which she left work as quitting, the August 9, 2011, administrative order, which claimant cannot now challenge, determined that circumstances of claimant's departure from work amounted to voluntarily leaving work without good cause. The department argues that the prior determination means that claimant "failed to provide accurate information in applying and reapplying for the benefits at issue" and that this makes her not without fault in obtaining the overpayment.

The Supplemental Appropriations Act 2008 does not define the "without fault" requirement for a discretionary waiver of repayment, but we agree with the department that a claimant is not "without fault" when the claimant provides inaccurate information that results in an overpayment, regardless of whether the claimant knowingly provided the inaccurate information. "Fault" does not typically suggest a "knowing" or "intentional" mental state. *See Webster's Third New Int'l Dictionary* 829 (unabridged ed 2002) (defining "fault" as a "mistake" or "error"). Moreover, the same section of the Supplemental Appropriations Act that addresses

---

[2] The Supplemental Appropriations Act 2008 permits states to enter into an agreement with the federal government under which the state can receive federal funds to pay emergency unemployment compensation to certain individuals who have exhausted their regular compensation rights. With respect to overpayments, it provides:

"In the case of individuals who have received amounts of emergency unemployment compensation under this title to which they were not entitled, the State *shall* require such individuals to repay the amounts of such emergency unemployment compensation to the State agency, except that the State agency *may* waive such repayment if it determines that- (1) the payment of such emergency unemployment compensation *was without fault* on the part of any such individual; and (2) such repayment would be contrary to equity and good conscience."

Supplemental Appropriations Act 2008, § 4005(b) (emphases added).

waiver of repayment provides that if a claimant "knowingly" makes a false statement that results in compensation to which the claimant is not entitled, the consequences are far more severe than being required to repay the overpayment. Supplemental Appropriations Act 2008, § 4005(a). A claimant who "knowingly" makes a false statement or "knowingly" fails to disclose a material fact, "shall be subject to prosecution[.]" *Id.* Thus, we understand "fault" as used in section 4005(b) to include mistakenly providing inaccurate information that results in an overpayment. Given the prior, binding, determination that claimant voluntarily quit work without good cause the week of October 17, 2010, and her undisputed representation in applying for benefits that she did not "quit" employment that week, the department correctly determined that claimant was not "without fault" in obtaining the overpayment that resulted from that inaccurate information. Thus, the board correctly affirmed the determination that claimant is not eligible for a waiver.

Affirmed.